## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         Crim. No. 19-1195 MV

MANUEL DELGADO-SALAZAR,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Manuel Delgado-Salazar's (hereinafter "Mr. Delgado") Motion to Dismiss for Prosecutorial Vindictiveness. Doc. 71. The government responded [Doc. 72] and Mr. Delgado replied [Doc. 73]. The Court, having considered the motions, relevant law, and being otherwise fully informed, finds that the motion is not well-taken and will be **DENIED**.

## BACKGROUND

On April 24, 2019, a Grand Jury returned an indictment against Mr. Delgado alleging that on or about March 28, 2019, he possessed with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Doc. 13. On February 16, 2020, Mr. Delgado filed his Motion to Dismiss for Prosecutorial Vindictiveness. Doc. 71. In his motion, Mr. Delgado represents that during the discovery phase of this case, Mr. Delgado "informed the government that he would be seeking to suppress evidence in this matter." Doc. 71 at 1. He represents that in response, "the prosecutor threatened that if the Defendant did not debrief with the government, the prosecutor would bring additional charges." *Id*. Mr. Delgado attaches email correspondence between his attorney and the

government to support this assertion. *See id*., Def. Exs. 1, 2. He asserts that "at the time of the prosecutor's threat to enhance charges, the prosecutor lacked probable cause to support the charges they argued they would bring against the Defendant if he refused to yield to the Government's demands." *Id*. at 1. Mr. Delgado next represents that, despite the prosecutor's threats, Mr. Delgado "pressed forward and sought suppression of evidence pursuant to his Fourth Amendment Rights, which tremendously upset the prosecutor in this matter. As anticipated, the prosecutor did not seek to add additional charges against the Defendant as it threatened." *Id*. at 1-2.

The government responds that Mr. Delgado's motion "is frivolous and should be denied." Doc. 72 at 1. The government argues that "[c]ounterintuitively, Defendant argues that the United States acted vindictively in discussing but ultimately *declining to bring* additional charges against him based on new evidence found on Defendant's phones following the initial indictment." *Id*. (emphasis in original). The government argues that Mr. Delgado's motion should be denied because he has failed to meet his preliminary burden of establishing prosecutorial vindictiveness, and even if he had met that burden, the government has established a legitimate, objective reason for the conduct that Mr. Delgado characterizes as vindictive. *Id*. at 1-2.

The government attaches as its Exhibit 1 the "complete email chain between the AUSAs and Defendant's counsel" in order to provide context for the two emails that Mr. Delgado attached as exhibits. Doc. 72, Gov't Ex. 1.[1] The emails reflect that on August 19, 2019, the assigned Assistant United States Attorneys ("AUSAs") emailed Mr. Delgado's attorney regarding the possibility of a plea agreement. Doc. 72, Gov't Ex. 1 at 7. Mr. Delgado's attorney responded that he was "still working the case," and indicating that he believed there were suppression issues. *Id*. at 6. The assigned AUSAs then responded that they had "just wanted to see if it's worth putting

---

[1] The Government's Exhibit 1 includes both of the emails provided as Defendant's Exhibits 1 and 2, in addition to additional email correspondence between the government and defense counsel.

together an offer," and noted that "[i]t sounds like we're headed for a suppression hearing, so I'll wait for the motion." *Id*. at 5. On August 22, 2019, the assigned AUSAs again emailed Mr. Delgado's attorney, this time offering to set up a safety valve debrief prior to Mr. Delgado filing his motion to suppress:

> I assume if Mr. Delgado is convicted he will assert that he is safety valve eligible for sentencing. As you know, he is required to fully and truthfully debrief in order to be safety valve eligible. We are willing to meet with him for a debrief, but it would need to be before any suppression motion is filed… By the time we have a decision on a suppression motion, any information he can provide in a debrief would be of little value to the government.

*Id*. at 4.

Mr. Delgado's attorney responded via email the next day, stating that he found the request "strange" and asking if this is a "new process" by the U.S. Attorney's office. *Id*. The assigned AUSAs sent another email in response, in which they characterized the request as a "run-of-the-mill request done in nearly every federal drug case," and informed defense counsel that his client could do a safety valve debrief "now or never" because the government "won't sit down with him after being forced to litigate a frivolous suppression motion. At that point, all of his intel will be stale." *Id*. at 3. In the same email, the assigned AUSAs stated:

> In my view, your client is not safety valve eligible based on his self-serving post-arrest interview with our case agent, during which he minimized his role and did not disclose all of his co-conspirators. We know better after examining the contents of his phones. Given his youth and criminal history, we'd like to give him an opportunity now to come clean and meet the qualifications of safety valve. That won't preclude him from filing a suppression motion or electing to go to trial.
>
> I will tell you there is evidence of additional crimes on his phones. How he chooses to proceed here will impact our decision to supersede in this case, or bring additional charges at the close of this case. This will be the last opportunity for us to come to the table. After a suppression motion is filed, he can always elect to plead guilty, but it won't be with the benefit of a plea agreement. And that would be risky because he would not be protected from later facing the additional crimes we have discovered.

> Another downside to that tack, is that we will oppose any continuances you seek. This is a very simple case for us to present. Your client was caught red-handed transporting a very large quantity of dope, and then admitted to everything on video. The evidence from his phone shows a more involved conspiracy than the one he admitted to, shows that he may have imported the meth into the country himself, and shows him in possession of and firing what appears to be a fully automatic weapon (which could also preclude his qualification for safety valve). It would be a very risky gamble to not lock us into a plea and solidify his qualification for safety valve.

*Id*. at 3.

Counsel for Mr. Delgado responded to the government's email on August 25, 2019, stating: "Your email sounds like you are affording two choices: debrief now, or else." *Id*. at 2. The assigned AUSAs responded the following day, stating in relevant part:

> For your client's sake, we are trying to be as transparent as possible about our intent going forward. At this point, we are willing to sit down with your client and facilitate a truthful debrief. If that debrief is truthful, we would seek a generous offer for your client… After you file a suppression motion, however, we will not be willing to resolve the case short of trial.

*Id*.

The government represents that Mr. Delgado ultimately chose not to participate in a debrief. Doc. 72 at 3. Mr. Delgado filed a Motion to Suppress Evidence on September 9, 2019. Doc. 27. The Court held a two-day evidentiary hearing on the Motion to Suppress Evidence on December 13, 2019, and December 18, 2019. The Court denied the Motion to Suppress Evidence in a Memorandum Opinion and Order on January 13, 2020. Doc. 57. The government has not yet brought any additional charges against Mr. Delgado. *See* Doc. 72 at 3.

## LEGAL FRAMEWORK

"Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system." *Bordenkircher v. Hayes*, 434 U.S. 357, 361–62 (1978) (quoting *Blackledge v. Allison*,

4

431 U.S. 63, 71 (1977)). "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* at 364.

The government violates the due process clause of the United States constitution if, during a criminal proceeding, it punishes a defendant for the exercise of his constitutional or statutory rights. *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991) (citations omitted). However, a prosecutor does not violate the due process clause by carrying out a threat made during plea negotiations to re-indict on more serious charges if a defendant does not plead guilty to the offense with which he was originally charged. *Bordenkircher*, 434 U.S. at 365. "Because the very purpose of instituting criminal proceedings against an individual is to punish, the mere presence of a punitive motivation behind prosecutorial action does not render such action unconstitutional." *United States v. Carter*, 130 F.3d 1432, 1443 (10th Cir. 1997) (citation omitted).

When a defendant raises a claim of prosecutorial vindictiveness, the defendant has the burden of proof and must establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness. *Raymer*, 941 F.2d at 1040 (citations omitted). If a defendant meets this initial burden, the burden shifts to the prosecution "to justify its decision with legitimate, articulable, objective reasons." *Id.* (citations omitted). However, "[i]f the defendant does not meet his burden of proof…, the district court need not reach the government justification issue." *Id.* (citations omitted).

With respect to actual vindictiveness, the question is whether the prosecutor's actions were "a direct and unjustifiable penalty for the exercise of a procedural right" by the defendant. *Id.* at 1041 (citing *United States v. Goodwin*, 457 U.S. 368, 384 (1982)). The Tenth Circuit instructs

courts to look for evidence of "hostility or punitive animus toward the defendant because [he] exercised [a] specific legal right." *United States v. Battles*, 745 F.3d 436, 459 (10th Cir. 2014) (quoting *Carter*, 130 F.3d at 1443). To demonstrate actual vindictiveness, a defendant carries an "onerous burden" and must demonstrate that the prosecutor was motivated by "genuine animus." *United States v. Bustamante-Conchas*, No. CR 13-2028 JAP, 2014 WL 12697358, at *4 (D.N.M. July 16, 2014) (citations omitted), *rev'd in part on other grounds,* 850 F.3d 1130 (10th Cir. 2017). This normally requires "direct evidence," such as statements by the prosecutor. *Id.* (citations omitted). "There is no vindictiveness as long as the prosecutor's decision is based upon the normal factors ordinarily considered in determining what course to pursue, rather than upon genuine animus against the defendant for an improper reason or in retaliation for exercise of legal or constitutional rights." *Raymer*, 941 F.2d at 1042 (quoting *United States v. DeMichael*, 692 F.2d 1059, 1062 (7th Cir. 1982)).

> With respect to a presumption of vindictiveness, the Supreme Court has explained:
>
> [I]n certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to 'presume' an improper vindictive motive. Given the severity of such a presumption, however— which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

*Goodwin*, 457 U.S. at 373. The Supreme Court has rejected a presumption of vindictiveness in pretrial situations in which a prosecutor offers a defendant the choice either to plead guilty or face more serious charges, "provided the prosecutor has probable cause on the more serious charges and the defendant is free to accept or reject the offer." *Raymer*, 941 F.2d at 1041 (citing *Bordenkircher*, 434 U.S. at 667-68). "In the absence of procedural unfairness to the defendant, the government may increase charges or make them more precise based upon new information or further evaluation of the case." *Id*. at 1042 (citation omitted). Courts must ask whether, "as a

practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right." *Id.*

## APPLICATION

First, the Court finds that Mr. Delgado has not established that the government acted with actual vindictiveness. *See Raymer*, 941 F.2d at 1040. The Court has reviewed the email correspondence between Mr. Delgado's attorney and the assigned AUSAs which forms the basis for Mr. Delgado's claim, and finds to no evidence of actual vindictiveness. The government has not acted with "hostility or punitive animus toward the defendant because [he] exercised [a] specific legal right." *Battles*, 745 F.3d at 459 (10th Cir. 2014) (quoting *Carter*, 130 F.3d at 1443). There is no evidence to suggest that either the indictment itself, or any action taken by the government during the course of the prosecution, was "a direct and unjustifiable penalty for the exercise of a procedural right" by the defendant. *Raymer*, 941 F.2d at 1041 (citation omitted).

Mr. Delgado argues that the government acted with actual vindictiveness because "the prosecutor lacked, and continues to lack, probable cause to form the basis for the additional charges that he threatened to bring if the Defendant refused to plea and debrief." Doc. 71 at 4. He claims that the prosecutor "merely threatened the defendant with additional charges in an attempt to dissuade him from seeking suppression… [and thereby] vindictively sought to punish the Defendant for asserting his constitutional rights." *Id*.

Mr. Delgado concedes that the government has not in fact brought any additional charges as a result of his decision to litigate a suppression motion. His claim of actual vindictiveness hinges not upon any actions actually taken by the government, but rather, on the "threat" to bring

additional charges. That "threat" consisted of the following statement made by the government in an email to Mr. Delgado's counsel:

> I will tell you there is evidence of additional crimes on his phones. How he chooses to proceed here will impact our decision to supersede in this case, or bring additional charges at the close of this case. This will be the last opportunity for us to come to the table. After a suppression motion is filed, he can always elect to plead guilty, but it won't be with the benefit of a plea agreement. And that would be risky because he would not be protected from later facing the additional crimes we have discovered.

Doc. 72, Gov't Ex. 1 at 3.[2] The government's email explained what evidence of additional crimes it had discovered on Mr. Delgado's phone that formed the basis for its statement that it may file additional charges: "[t]he evidence from his phone shows a more involved conspiracy than the one he admitted to, shows that he may have imported the meth into the country himself, and shows him in possession of and firing what appears to be a fully automatic weapon…" *Id.*

A prosecutor acts appropriately when he supersedes an indictment upon discovering evidence of additional crimes, or when, upon reevaluating the evidence already in his possession, he realizes that the evidence has a "broader significance" than the government initially understood. *Goodwin*, 457 U.S. at 381; *accord Raymer*, 941 F.2d at 1042. As the Supreme Court has explained, "[i]n the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. *Goodwin*, 457 U.S. at 381.

A prosecutor also acts appropriately when he informs a defendant that he is considering superseding an indictment or filing additional charges if the defendant does not plead guilty. *See Bordenkircher*, 434 U.S. at 365 (citation omitted) (noting that "a rigid constitutional rule that

---

[2] Mr. Delgado's representation that "the prosecutor threatened that if the Defendant did not debrief with the government, the prosecutor would bring additional charges" [Doc. 71 at 1] mischaracterizes this correspondence.

would prohibit a prosecutor from acting forthrightly in his dealings with the defense could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged.").

When a court is analyzing a claim of actual vindictiveness, "the prosecutor's comments must be taken in context." *Raymer*, 941 F.2d at 1041. Here, the context demonstrates that the government was not acting with actual vindictiveness when it informed Mr. Delgado's attorney that it was considering superseding the indictment or filing additional charges, and that Mr. Delgado's decision to engage in plea negotiations would influence the government's decision with respect to the additional charges. On the contrary, the government was "acting forthrightly in [its] dealings with the defense." *Bordenkircher*, 434 U.S. at 365. In its email, the government explained that after examining the contents of Mr. Delgado's phones, it learned that Mr. Delgado was not forthcoming during his post-arrest interview with the case agent. Doc. 72, Gov't Ex. 1 at 3. The government offered him another opportunity to sit down for a safety valve debrief, and explained that doing so "won't preclude him from filing a suppression motion or electing to go to trial." *Id*. Two days later, in another email, the government explained that "[f]or your client's sake, we are trying to be as transparent as possible about our intent going forward." *Id*. These statements by the government are a far cry from the "hostility or punitive animus toward the defendant" that characterizes actual vindictiveness. *Battles*, 745 F.3d at 459 (citation omitted).

Furthermore, the government's actions were "based upon the normal factors ordinarily considered in determining what course to pursue, rather than upon genuine animus against the defendant." *Raymer*, 941 F.2d at 1042 (citation omitted). This is evidenced by the government's contemporaneous statement that its request for a safety valve debrief prior to a suppression motion was a "run-of-the-mill request done in nearly every federal drug case." Doc. 72, Gov't Ex. 1 at 3.

Accordingly, the Court finds that Mr. Delgado has not met his "onerous burden" to establish that the prosecutor was motivated by "genuine animus." *Bustamante-Conchas*, 2014 WL 12697358, at *4 (D.N.M. July 16, 2014) (citations omitted).

Next, the Court finds that Mr. Delgado has not established a "realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." *Raymer*, 941 F.2d at 1040 (citations omitted). The Supreme Court has held that there is no such presumption of vindictiveness where a prosecutor offers a defendant the chance either to plead guilty or face more serious charges, "provided the prosecutor has probable cause on the more serious charges and the defendant is free to accept or reject the offer." *Raymer*, 941 F.2d at 1041 (citing *Bordenkircher*, 434 U.S. at 667-68). Mr. Delgado argues that this Court should find a presumption of vindictiveness because "the government threatened to enhance the Defendant's charges knowing it lacked probable cause to do so." Doc. 71 at 5.

Mr. Delgado asserts that his argument is "amply supported by the email correspondence attached hereto." However, the email correspondence, far from supporting Mr. Delgado's argument, supports the opposite conclusion: that the government was acting within the bounds of *Bordenkircher*, which allows the prosecution to threaten more serious charges–based on probable cause–if a defendant declines a plea offer. *See Bordenkircher*, 434 U.S. at 667-68. The government's email to defense counsel explains the evidence from Mr. Delgado's phone which forms the basis for the government's contemplation of new charges: "I will tell you there is evidence of additional crimes on his phone… The evidence from his phone shows a more involved conspiracy than the one he admitted to, shows that he may have imported the meth into the country himself, and shows him in possession of and firing what appears to be a fully automatic weapon…" Doc. 72, Gov't Ex. 1 at 3. Contrary to Mr. Delgado's assertions, this email correspondence offers

10

no basis for the Court to conclude that the government's threat to supersede the indictment was not based on probable cause.[3]

The mere fact that the government indicated that it may supersede the indictment or file additional charges if Mr. Delgado did not accept a plea agreement prior to filing a motion to suppress does not give rise to a presumption of vindictiveness. As the Tenth Circuit and the Supreme Court have both explained, "changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial 'vindictiveness.'" *Raymer*, 941 F.2d at 1042 (quoting *Goodwin*, 457 U.S. at 379-80). A prosecutor is permitted to file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded. *Id.* (citing *Goodwin*, 457 U.S. at 380).

In *Goodwin*, the Supreme Court explained that "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting." 457 U.S. at 381. This is due partially to the fact that at the pretrial stage, "the prosecutor's assessment of the proper extent of prosecution may not have crystalized." *Id.* The explained that additionally:

> [A] defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter…
>
> A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in

---

[3] Mr. Delgado also asks the Court to conclude that the government lacks probable cause for the threatened charges based on the fact that "[t]he defendant refused the government's offer and the government has failed to seek or obtain a superseding indictment as threatened – the government lacks evidence to support the additional charges and has always known it." Doc. 71 at 5. Yet Mr. Delgado cites no authority which would support the conclusion that the government lacks probable cause for certain charges merely because it has not sought or obtained an indictment on such charges.

*Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id*.

Accordingly, the Court finds that Mr. Delgado has failed to establish a "realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." *Raymer*, 941 F.2d at 1040 (citations omitted).

Because Mr. Delgado has not met his burden to establish either actual vindictiveness or a presumption of vindictiveness, the Court need not reach the issue of whether the prosecution has justified its decision. *Id*.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Mr. Delgado's Motion to Dismiss for Prosecutorial Vindictiveness [Doc. 71] is **DENIED**.

Dated this 24ᵗʰ day of April, 2020.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Román R. Romero                                  Matthew T. Nelson
*Attorney for Mr. Delgado-Salazar*                *Assistant United States Attorney*